IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMY ANNETTE BEAVER,

              OPINION AND ORDER

        Plaintiff,

              20-cv-1003-bbc

   v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Amy Annette Beaver appeals a decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act. She argues that the administrative law judge (ALJ) who denied her application failed to properly evaluate the medical opinions in the record that supported more restrictive limitations on her capacity for work than the ALJ found. As explained below, this challenge is not persuasive. Accordingly, I am dismissing plaintiff's appeal and confirming the decision of the Acting Commissioner.

The following facts are drawn from the Administrative Record ("AR"), dkt. #12.

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

1

FACTS

A. <u>Background</u>

On August 27, 2018, plaintiff Amy Annette Beaver applied for disability insurance benefits under the Social Security Act, alleging that she had been disabled since February 2, 2016 from anxiety and depression. AR 184-187. Plaintiff has a high school education and earned her paralegal certificate in 2010. She worked full time as a paralegal in a law firm in 2011-2013 and then five hours a day as an office assistant for a roofing company from March 2014 to February 2016. On her disability application, plaintiff said she had stopped working because of her conditions and because she could not afford child care.

On a function report submitted on September 11, 2018, plaintiff reported that she had no physical limitations but her anxiety and depression affected her memory, concentration, and understanding, as well as her ability to follow instructions and complete tasks. Plaintiff reported that she stayed home as much as possible, but went to her daughters' school daily to drop them off and pick them up, shopped in stores, spent time with her extended family, and did not have trouble getting along with others or with authority figures. Plaintiff said her anxiety made it difficult to be a working mother, and that after she lost her job in 2016, she and her husband decided she would stay home to care for their children. AR 203.

Plaintiff had a clinical interview with Dr. Frank Elmudesi, Psy.D., and received counseling from Krista Doerr through the Jefferson County Department of Health and

Human Services from August 2016 up to the date of the ALJ's decision. Medications were prescribed by Dr. Melvin Haggart, a psychiatrist.

## B. Medical Opinions

1. Frank Elmudesi, Psy. D.

In connection with her application, plaintiff was seen by Frank Elmudesi, Psy. D., for a clinical interview and mental status examination on February 25, 2019. AR 405-08. Plaintiff told him what she stated in her September 2018 function report, which was that she could not work because of serious anxiety problems that had existed since childhood, namely frequent panic attacks and discomfort in social situations. She added that her problems had worsened after having children: she worried constantly about her children and became easily overwhelmed with the demands of daily life. Her daily activities consisted of rising at 6 a.m., getting her children ready for school, and then attending intermittently to other daily activities, such as running errands with her husband. She was able to drive and manage her finances. She was taking Wellbutrin and Cymbalta and denied any history of psychiatric hospitalizations. Plaintiff's husband reported that his wife was not "doing very well," tended to avoid going outside the home, and had difficulty with motivation and multi-tasking. Elmudesi noted that plaintiff's work performance has "reportedly been somewhat limited due to her difficulties with sustained concentration and history of recurrent social anxiety and depressive tendencies." AR 408.

Elmudesi described plaintiff as cooperative and "fairly friendly upon approach." She was oriented to person, place, and time, had a normal stream of mental activity, and appeared to be a fair historian. Her affect and demeanor were consistent with her mood, which she described as a feeling of anxiousness and sometimes hopelessness and worthlessness. Elmudesi found plaintiff's thought process coherent and logical, with no evidence of thought disorder. Testing plaintiff's concentration, Elmudesi noted that she was not able to perform serial 7's, but could do serial 3's, could spell "world" backwards and follow three-step commands. Elmudesi concluded that plaintiff's symptoms were consistent with a depressive disorder and a generalized anxiety disorder. In a "Statement of Work Capacity," Elmudesi wrote that "[c]laimant appears to be having difficulty being able to perform job related duties in a regular-routine fashion at this time on a full-time basis due to her propensity toward anxiety and depression." AR 408.

2. Therapist Krista Doerr

Plaintiff received counseling from Krista Doerr, a therapist with the Jefferson County Department of Health and Human Services, between August 2016 and the date of the administrative hearing. On December 5, 2018 and again on September 6, 2019, Doerr completed a check-box form on which she wrote that plaintiff had "marked" limitations in her ability to: (1) understand, learn, and retain work instructions; (2) sustain attention and persist at simple and routine tasks for two hour intervals; (3) respond to changes in the work setting; and (4) adapt to demands and pressures of simple and routine work settings. AR

410-412, 482-484. Doerr wrote that plaintiff was depressed, anxious, and restless with a depressed mood most of the day, with a markedly diminished interest in almost all activities, poor concentration, and an inability to make decisions. AR 410, 483.

3. <u>Dr. Melvin Haggart</u>

Dr. Haggart also completed a mental impairment questionnaire, in which he stated that plaintiff would have marked limitations in her ability to complete a work day and week without interruptions from psychologically-based symptoms; maintain regular attendance and punctuality across a work week without interruptions from psychologically-based symptoms; accept criticism or ask for help from a supervisor; and adapt to the demands and pressures of simple and routine work settings. AR 487. Dr. Haggart thought plaintiff would miss about four days a month because of her mental impairments.

4. <u>State agency consultants</u>

Robert Barthell, Psy. D., a state agency psychological consultant, reviewed the record initially after plaintiff applied for benefits and found that plaintiff's mental impairments did not cause more than mild mental limitations and were therefore not severe. On reconsideration, however, a second consultant, Erika Gilyot-Montgomery, determined that plaintiff's mental limitations imposed moderate limitations in two broad, functional categories: (1) social functioning, and (2) concentration, persistence, or pace. Translating these limitations into a residual functional capacity assessment, Gilyot-Montgomery found

plaintiff capable of performing simple tasks on a sustained basis and would "do best" with brief and superficial interaction with others in a work setting with only occasional changes. AR 88-90.

### C. Administrative Hearing

After the local disability agency denied plaintiff's claim initially and on reconsideration, plaintiff requested an administrative hearing, which was held on November 14, 2019, before ALJ Guila Parker. Plaintiff was represented by counsel and testified, as did a vocational expert. Plaintiff testified that she had been able to work until her second daughter was born in late 2015, at which point she found it too stressful to take care of her children and work outside the home. AR 44. Plaintiff said it took her longer to complete tasks and she found it more difficult to leave her home. AR 46. At the same time, however, she said she dropped her children off at school and walked them to the classroom, shopped in stores, visited her mom and her cousin at times, and attended school events. AR 46-49. Plaintiff also testified that she struggled with motivation, but she was on a new medication that was helping. AR 51. Her daily activities typically consisted of getting her children up, fed, dressed, and to school; doing household chores such as dishes, laundry, and cleaning; and taking care of her two dogs. AR 53-55. She said that because of her anxiety and depression, she tended to get overwhelmed and had at least two days a week where she did not do anything. AR 54. Plaintiff testified that even if she did not have children, she could

not work full time because she could not tolerate the mental stress of work or tolerate criticism well. AR 51-52.

The vocational expert offered testimony about how various hypothetical limitations would affect the ability of a person of plaintiff's age, experience, and education to perform different kinds of jobs. In response to a hypothetical proposing the same limitations the ALJ would later find in her decision, the vocational expert testified that such an individual would not be able to perform plaintiff's past work but could make a vocational adjustment to other work existing in significant numbers in the national economy, namely: cleaner (150,000 jobs); sorter (130,000 jobs); and housekeeper/maid in a hotel setting (155,000) jobs. AR 62. The vocational expert testified that an individual who could tolerate having only brief and superficial interactions with her supervisors would be unable to perform any job because such a person would "not make it through the probationary period." AR 64.

### D.  The ALJ's Decision

The ALJ issued her decision on January 13, 2020, finding plaintiff not disabled. Although she did not deny that plaintiff's anxiety and depression were "severe" in that they significantly limited her ability to perform basic work activities, she rejected plaintiff's contention that they prevented all competitive employment. Evaluating the four broad areas of functioning relevant to mental impairments (known as the "Paragraph B" criteria of the listings for mental impairments), the ALJ found that plaintiff had mild limitations in two categories: (1) understanding, remembering or applying information; and (2) adapting or

managing oneself. In the remaining two categories, interacting with others and maintaining concentration, persistence or pace, the ALJ found plaintiff had moderate limitations. AR 17-18. With respect to plaintiff's social functioning, the ALJ explained that although plaintiff alleged she had difficulty engaging in social activities, getting along with others, and dealing with crowds, plaintiff also said she could get along with others, shop, spend time with friends and family, deal appropriately with authority, and live with others. The ALJ further noted that although medical providers described plaintiff at times as seeming anxious, depressed or worried, she was also noted to have good rapport with her health care providers, was described as pleasant and cooperative, and appeared comfortable during appointments. Overall, the ALJ found the evidence insufficient to show that plaintiff's ability to relate to and work with supervisors, co-workers, or the public was seriously limited. AR 18. With respect to concentration, persistence or pace, the ALJ found that plaintiff was moderately limited, noting plaintiff's allegations that she had trouble focusing, following directions, and completing tasks, as well as the treatment records documenting plaintiff's "persistent reports of severe anxiety despite routine treatment." AR 18. However, she found insufficient evidence to show that plaintiff's abilities in this area were more limited, noting that she was able to drive, prepare meals, watch television, handle her own medical care, manage funds, and care for her children and pets, and that providers described her as engaged, with good attention and normal thought content, with no mention of distractibility. Id.

The ALJ determined that plaintiff had the physical residual functional capacity to perform work at all exertional levels. AR 19. However, she found that plaintiff had various non-exertional limitations resulting from her anxiety and depression, specifically:

> she could understand, remember, and carry out simple or detailed instructions that carry a reasoning development level no greater than 03;
>
> she could maintain concentration, persistence, and pace for two-hour intervals over an eight-hour day with routine breaks;
>
> she could work in a low stress job, which the ALJ defined as one requiring only occasional work-related decisions, only occasional changes in the work setting, and no fast-paced production quotas; and
>
> she could occasionally interact with supervisors, co-workers, and the public.

Id.

In reaching these conclusions, the ALJ considered the various medical opinions concerning plaintiff's mental limitations and explained the degree to which she found them persuasive. The ALJ rejected the assessments from Krista Doerr and Dr. Haggart, finding their conclusions that plaintiff had certain marked limitations were inconsistent with their own treatment notes and with the mental status exam performed by Elmudesi, which reported plaintiff's mental status to be generally normal and described her as pleasant, cooperative, friendly, alert, with normal memory, concentration and behavior. AR 26. Further, the ALJ found that the marked limitations plaintiff claimed were inconsistent with plaintiff's reports to her providers that medications were stabilizing her symptoms and she was improving, as well as with her wide array of activities of daily living. Finally, the ALJ

observed that Doerr's contemporary treatment notes suggested that her assessment of plaintiff's limitations was based solely on plaintiff's own reports. Id.

As for the state agency consultants, the ALJ found Gilyot-Montgomery's assessment that plaintiff had some moderate limitations more persuasive than Barthell's opinion that her limitations were only mild. AR 24-25. However, the ALJ rejected Gilyot-Montgomery's opinion that plaintiff's moderate difficulties in social functioning would limit her to only "superficial" interactions with co-workers and supervisors, finding instead that a limitation to "occasional" interaction with others was sufficient to address plaintiff's moderate social difficulties. AR 25. The ALJ explained:

> A limitation to only superficial interaction is inconsistent with the claimant's own report, where she indicated that she is shy but respectful of authority figures and can be productive in the community with shopping tasks, going to her daughter's school, interacting with teachers, and attending special events at the school. The claimant does not allege any difficulty getting along with others. She does, however, indicate that she does not socialize much, and her husband has reported that she avoids leaving home. At the hearing, the claimant stated that she does not handle criticism well. It should also be noted that treatment providers have not described any disrespectful behavior, deficits in interaction style or content, inability to maintain appropriate eye contract, or other concerns in this domain; rather, her behavior and affect have been normal, and she has been described as alert and oriented in casual conversation. The claimant has also been described as "fairly friendly upon approach" and cooperative.

AR 25 (citations omitted).

Relying on the vocational expert's testimony, the ALJ found that plaintiff's residual functional capacity precluded her from performing her past relevant work as a paralegal, bank teller, or group home worker. AR 27. However, relying again on the vocational expert's testimony, the ALJ found that plaintiff could make a vocational adjustment to other

work existing in significant numbers in the national economy, namely: cleaner (150,000 jobs); sorter (130,000 jobs); and housekeeper/maid in a hotel setting (155,000) jobs. AR 28.

The Appeals Council subsequently denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## OPINION

Plaintiff seeks judicial review of that decision under 42 U.S.C. § 405(g). On judicial review, the agency's factual findings are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014). In reviewing an ALJ's decision, the court applies a common-sense reading and considers the opinion as a whole. Winsted v. Berryhill, 923 F.3d 472, 478 (7th Cir. 2019).

In this appeal, only one aspect of the ALJ's decision is at issue: plaintiff's residual functional capacity assessment, that is, the ALJ's findings about what plaintiff "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff contends the ALJ erred in

rejecting the medical opinions in the record that supported more severe limitations than the ALJ found.

Because plaintiff's claim was filed after March 27, 2017, the ALJ was required to consider the medical opinions in accordance with the commissioner's new rules, set forth at 20 C.F.R. §§ 404.1520c. Under these rules, the opinions of state agency physicians are considered "prior administrative medical findings" that the ALJ must consider, along with any other medical opinions, with no opinion entitled to any deference or specific evidentiary weight. Id. As required under the prior rules, the ALJ is to consider a number of factors in evaluating each opinion's persuasiveness, including supportability, consistency, the provider's speciality and relationship with the claimant, with supportability and consistency being the most important. Id. Finally, although ALJs must discuss in their decisions how persuasive they find the various medical opinions and prior administrative medical findings, they need only explain how they considered the supportability and consistency factors; discussion of the other factors is optional except when two medical opinions are otherwise equally persuasive. Id.

Plaintiff acknowledges that the ALJ addressed all of the medical opinions and made findings regarding their supportability and consistency with other evidence in the record. She insists, however, that the ALJ's explanations "cannot withstand scrutiny." Plt.'s Br., dkt. # 13, at 8. I will address her challenges to each opinion in turn.

A. Gilyot-Montogmery

Plaintiff argues that remand is required because the ALJ erred in rejecting Gilyot-Montgomery's opinion that plaintiff would do best if she were limited to "brief and superficial" interactions with others. Plaintiff notes that if the ALJ had included such a limitation, she would have had to find plaintiff disabled based on the vocational expert's testimony that a limitation to "brief and superficial" interactions with supervisors would preclude competitive employment.

Because the ALJ specifically addressed this aspect of Gilyot-Montgomery's opinion and explained why she rejected it, I must defer to her decision. Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (where ALJ discounts physician's opinion after considering regulatory factors, court "must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons—a very deferential standard that we have, in fact, deemed 'lax.'") (quoting Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008) (internal citation and quotation omitted)).

Plaintiff argues that deference is not warranted because the ALJ ignored material facts, namely: (1) Gilyot-Montgomery included the limitation to "brief and superficial" interactions in the section of the mental assessment form that asked her to rate plaintiff's impairments in concentration, persistence and pace, not just in the section of the form concerning social limitations; and (2) the ALJ did not adequately explain why she rejected evidence that supported such a limitation. Neither of these arguments is persuasive.

13

First, simply because the ALJ agreed with Gilyot-Montgomery that plaintiff would have some limitations on concentration, persistence or pace does not mean the ALJ was required to adopt the manner in which Gilyot-Montgomery translated those limitations into specific work-related limitations. When fashioning a claimant's residual functional capacity, "an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion[.]" Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) (quoting Diaz v. Chater, 55 F.3d 300, 306 n. 2 (7th Cir. 1995)). Here, the ALJ found Gilyot-Montgomery's opinion only "partially persuasive," and explained at length why she did not agree with the finding that plaintiff could have only superficial contact with others. Specifically, the ALJ noted the wealth of evidence in the record suggesting that plaintiff had no trouble getting along with others, had generally normal mental status exams, and was able to complete activities out in the community, including shopping, taking her children to school, and attending school events. That the ALJ did not explicitly say that Gilyot-Montgomery linked her proposed social limitations in part to plaintiff's limitations in concentration, persistence, and pace is not a basis to remand this case, given that the ALJ did not fully credit the opinion in the first place. Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010) (in reviewing an ALJ's opinion, "we give the opinion a commonsensical reading rather than nitpicking at it.") (internal quotation omitted).

Plaintiff's second challenge fares no better. She argues that the ALJ's conclusion about her social limitations and the decision to reject Gilyot-Montgomery's proposed limitation to "brief and superficial" contacts is not supported by substantial evidence because

14

the ALJ ignored significant evidence in the record showing mental "abnormalities" or "deficiencies." See Reply Br., dkt. #16, at 4-5. In support, plaintiff cites various records, primarily from her visits with Doerr and Haggart, in which they noted her self-reports of feeling anxious, depressed or overwhelmed, and of her legs sometimes shaking during counseling sessions. As plaintiff acknowledges, however, the ALJ discussed much of this evidence in her decision, citing to the various records by exhibit number. The essence of plaintiff's argument is that the ALJ "cherry-picked" the evidence by discussing only those specific records favorable to her decision. It is true that an ALJ must consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). At the same time, however, the ALJ need not mention every piece of evidence, so long as she does not ignore an "entire line" of evidence that supports a finding of disability. Deborah M. v. Saul, 994 F.3d 785, 789 (7th Cir. 2021). See also Kolar v. Berryhill, 695 Fed. Appx. 161, 161-62 (7th Cir. 2017) ("ALJs need not comment on every line of every physician's treatment notes.").

Here, the ALJ specifically addressed all the evidence that plaintiff points out; she simply did not assign the significance to it that plaintiff prefers. The ALJ acknowledged that plaintiff's mental health records showed that she reported feeling anxious, overwhelmed, and depressed to her providers, and that her providers noted that her affect was often congruent with her stated mood. The ALJ also noted her reports to Dr. Elmudesi that she had frequent panic attacks and was highly uncomfortable in social situations, as well as her testimony that

15

she does not socialize much or handle criticism well. The ALJ contrasted these reports with plaintiff's generally normal mental status evaluations; her function reports indicating that she is shy but respectful of authority figures and gets along well with others; her ability to engage in tasks and social interactions outside the home such as shopping, going to her daughter's school, interacting with teachers, and attending school events; and her normal, alert, and respectful appearance to her treating providers. The omitted evidence that plaintiff highlights does not reveal any information about her social functioning that substantially differed from the evidence the ALJ addressed. As a result, the ALJ did not err by failing to include a specific discussion of each and every record.

Finally, plaintiff notes, in passing, that "the ALJ failed to explain why she rejected the limitation to 'brief'" interaction." Dkt. #13, at 8. I infer that plaintiff is referring to the fact that the ALJ omitted the word "brief" when describing Gilyot-Montgomery's opinion. See AR 25. Apart from noting the omission, however, plaintiff has not developed any argument as to why it matters to the finding that she is not disabled. Accordingly, I am not considering it. Krell v. Saul, 931 F.3d 582, 584 (7th Cir. 2019) (perfunctory and undeveloped arguments are waived).

Ultimately, although it is possible that a different factfinder reviewing this record might have found Gilyot-Montgomery's "brief and superficial" limitation necessary, plaintiff has not identified any evidence that compels such a finding. Accordingly, there is no basis on which to remand this case.

B. Dr. Elmudesi

As the ALJ acknowledged, the consultative examiner, Dr. Elmudesi, concluded that plaintiff would have difficulty performing job duties in a regular-routine fashion on a full time basis due to depression and anxiety. AR 25. The ALJ rejected this conclusion, finding it unsupported by the objective medical evidence in the record, including Dr. Elmudesi's own examination, which showed that plaintiff "has essentially normal memory, concentration, thought content, abstract thinking, judgment, and insight" and noted only "minor" deficits. AR 25. The ALJ also noted that Elmudesi's statement was not a true "function by function analysis" of plaintiff's work capabilities and was inconsistent with her reported activities of daily living. Id.

As she did with respect to the assessment of Gilyot-Montgomery's opinion, plaintiff argues first that the ALJ's consideration of Dr. Elmudesi's opinion was flawed because her discussion of the objective evidence was cherry-picked and incomplete. I disagree. As just discussed, the ALJ was not required to discuss each and every medical note, and her decision overall shows that she considered the mental health records documenting plaintiff's complaints of depression and anxiety. Second, plaintiff accuses the ALJ of "playing doctor" in describing the deficits noted by Dr. Elmudesi as "minor," but this, too, is unpersuasive. Plaintiff argues that this conclusion was inconsistent with her inability to complete serial subtraction by seven, but one need not be a doctor to conclude that an inability to perform this test is not evidence of major concentration problems, given that plaintiff was able to perform serial threes, spell a five-letter word backwards, complete a three-step command, and

17

otherwise demonstrated normal mental functioning.  Third, plaintiff has not challenged the ALJ's findings that Elmudesi's broad statement offered no function-by-function assessment of plaintiff's capabilities and was inconsistent with her activities of daily living.  For all these reasons, the ALJ's assessment of Dr. Elmudesi's opinion will be upheld.

### C. Krista Doerr and Dr. Haggart

Finally, plaintiff challenges the ALJ's determination that Doerr and Dr. Haggart were not persuasive when they indicated that plaintiff had marked limitations in certain areas. The ALJ cited four reasons for rejecting Doerr's opinion:  (1) Doerr did not provide a a supporting rationale for her opinion nor was one evident from her session notes; to the contrary, her notes suggested that she based her opinion solely on plaintiff's subjective complaints; (2) plaintiff's generally normal mental status evaluations did not support the limitations Doerr identified; (3) the finding of "marked" limitations was inconsistent with plaintiff's reports that medication was stabilizing her symptoms and she was improving; and (4) the opinion was inconsistent with plaintiff's wide array of activities of daily  living and with plaintiff's own reports. AR 25-26.  The ALJ relied largely on the same reasons for rejecting Dr. Haggart's opinion, noting in addition that the doctor prescribed, refilled, and modified plaintiff's medications but did not regularly perform or provide mental status examinations.

Once again, plaintiff argues that the ALJ's rationale was flawed because she presented a one-sided view of Doerr and Haggart's contemporary treatment records.  I have already

rejected this argument and will not address it further. Plaintiff takes the same approach with respect to the ALJ's analysis of her daily activities, but again, the ALJ's decision shows that she reviewed all of the evidence, including plaintiff's assertion that she does not tolerate criticism well, is uncomfortable in social situations, and is overwhelmed just keeping up with ordinary activities such as caring for herself, her home, and her children. AR 22, 25. Contrary to plaintiff's argument, the ALJ did not "ignore" this evidence, but determined that although plaintiff's reported symptoms were severe, they were not severe enough to prevent her from all paid work. The ALJ reasonably based this conclusion on plaintiff's ability to care for her children and two dogs, interact with teachers and others at her daughter's school, attend school events, drive, handle money, shop in stores and online, complete art projects and crafts, prepare meals, clean house, and her reported ability to get along with others and respect authority. The ALJ also reasonably noted that plaintiff's reported feelings of being overwhelmed were due largely to trying to balance a job and care for her children, but these difficulties did not provide a basis for awarding disability. AR 23. Accordingly, regardless whether the ALJ might have attached too much significance to plaintiff's report that she was "stabilizing" on medication or on Doerr's reliance on plaintiff's self-reports in completing the mental impairment questionnaire, the record contained ample evidence to support her conclusion that Doerr and Haggart's opinions were deserving of little weight.

At most, plaintiff has shown that there was room for disagreement about the severity of her mental limitations. In this situation, the court must affirm the decision of the ALJ.

ORDER

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Amy Annette Beaver's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 1st day of March, 2022.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge